# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

VELMA POUGH, )
)
          Plaintiff, )
) No. 05 C 1327
   v. )
) Judge Ruben Castillo
SBC COMMUNICATIONS, INC., )
et al. )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Velma Pough ("Plaintiff") filed this suit against her former employer Illinois Bell Telephone Company ("Illinois Bell"), its parent company, SBC Communications, Inc. ("SBC"), along with employee welfare plans Ameritech Sickness and Disability Benefit Plan ("STD Plan"), Ameritech Long Term Disability Plan ("LTD Plan"), and SBC Umbrella Benefit Plan No. 1 ("Umbrella Plan") (collectively "Defendants"). (R. 24, First Am. Compl. ("FAC"). She alleges claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Presently before the Court is Defendants' motion for summary judgment on all counts. (R. 89, Defs.' Mot. for Summ. J.) For the following reasons, the motion is granted.

1

Illinois Bell is a wholly owned subsidiary of SBC Teleholdings, Inc., which is a wholly owned subsidiary of SBC. (R. 92, Defs.' Facts ¶ 2.) Plaintiff, a 56-year old African-American woman, began her employment with Illinois Bell in 1974. (*Id.* ¶ 26.) At the time of her termination in January 2004, she was working as a telecommunications specialist. (*Id.* ¶ 27.) During her employment, Plaintiff was a participant in Umbrella Plan, an employee welfare plan that included the STD Plan and the LTD Plan (collectively "Plans"). (*Id.* ¶ 3.) The Plans' administrator, SBC, operated under the name SBC Medical Absence and Accommodation Resource Team ("SMAART"). (*Id.* ¶ 4.) SMAART administers disability and workers' compensation benefit claims. (*Id.*) SMAART also determines whether a request for disability-based job accommodation is medically substantiated. (*Id.* ¶ 5.)

In November 2002, Plaintiff was hospitalized for seven days due to a psychiatric condition. (*Id.* ¶ 29.) Plaintiff applied for and was approved for medical leave for the time she

---

[1] In accordance with Local Rule 56.2, Defendants served Plaintiff, who is presently proceeding *pro se*, with a "Notice to *Pro Se* Litigants Opposing Summary Judgment," outlining in plain language the precise requirements for her response to the Motion for Summary Judgment. (R. 93, Defs.' Not. of Filing & Serv. of Not. to *Pro Se* Litigant Opposing Mot. for Summ. J.) Plaintiff filed a response to the motion, but it is disjointed and contains argument about wholly irrelevant matters, such as the alleged theft of $1,000 from Plaintiff's bank account, her volunteer work at a school, and some Chicago Bears' tickets which Plaintiff believes were stolen from her. (*Id.* at 1-9.) Even giving the document liberal construction, Plaintiff's response falls far short of complying with the requirements of Local Rule 56.1 or Federal Rule of Civil Procedure 56(e), and among other things, does not contain a paragraph-by-paragraph response to Defendants' statement of facts. (*See* R. 98, Pl.'s Resp. to Defs.' Mot. for Summ. J.) District courts are entitled to expect compliance with this rule, *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005), and even *pro se* litigants must comply. *Greer v. Bd. of Educ. of Chicago*, 267 F.3d 723 (7th Cir. 2001). Thus, the Court deems Defendants' facts admitted. *See* Local Rule 56.1(b)(3)(C). Unless otherwise indicated, the facts stated herein are derived from Defendants' Statement of Undisputed Material Facts. (R. 92, Defs.' Facts.)

was absent from work. (*Id.* ¶ 30.) Plaintiff received short-term disability benefits for the dates of her hospitalization. (*Id.* ¶ 31).

A few months after her return to the office, Plaintiff began exhibiting disruptive behavior. In February 2003, Plaintiff's supervisor, Rick Bell ("Bell"), received a report that Plaintiff had called co-worker Amanda Huffman ("Huffman") fat. (*Id.* ¶ 32; *id.*, Exs. 11-13.) Bell issued Plaintiff a written warning. (*Id.*) On March 3, 2003, Plaintiff sent emails to various individuals at Illinois Bell with the subject line "latest target!!!!!," in which she complained about a co-worker making "threatening gestures" toward her. (*Id.* ¶ 34; *id.*, Ex. 15.) Also in March 2003, Huffman complained to Bell that Plaintiff had a voodoo doll and kit on her desk, and that Plaintiff had asked Huffman what her daughter's name was while holding the voodoo doll. (*Id.* ¶ 35; *id.*, Exs. 8, 12.) During February and March 2003, Plaintiff filed numerous internal complaints with Illinois Bell's Asset Protection department, which is responsible for resolving employee complaints, alleging that her home telephone had been erroneously disconnected; that her international calls were being blocked; that the lights had been turned off while she was using the employee restroom; that her emails would not print; and that tacks and nooses had been placed on her chair. (*Id.* ¶ 36; *id.*, Ex. 6.) Asset Protection attempted to investigate Plaintiff's complaints, but Plaintiff was not cooperative. (*Id.* ¶ 37; *id.*, Ex. 17.) Asset Protection ultimately determined that many of the complaints were not work-related, and the others were unfounded. (*Id.* ¶ 37.)

On or about March 5, 2003, Plaintiff was suspended from work pending a fitness for duty evaluation. (*Id.* ¶ 38.) Plaintiff thereafter visited Dr. Suzanne Cooperman ("Dr. Cooperman"), a psychiatrist selected by Defendants, who completed an examination and released Plaintiff to

3

return to work. (*Id.* ¶¶ 41-42; *id.*, Exs. 3, 8.) Plaintiff returned to work on or about April 7, 2003. (*Id.* ¶ 43.) Shortly thereafter, she continued to exhibit disruptive behavior. (*Id.* ¶ 44.) Plaintiff's co-worker, Carmen Collazo ("Collazo"), reported that Plaintiff had engaged in confrontational behavior with her, using profanity and sticking her finger in Collazo's face. (*Id.*; *id.*, Ex. 20.) Plaintiff also placed an emergency call to 911 to complain about signs on Illinois Bell equipment stating "RIP," short for "Retired in Place," which are placed on equipment that is no longer in use. (*Id.* ¶ 45; *id.*, Ex. 8 at 59-61.) Plaintiff maintained that the signs made her feel threatened. (*Id.* ¶ 45.) In July 2003, Plaintiff received a verbal warning from office manager Mike Edgar ("Edgar") for the disruption she caused with the 911 call. (*Id.* ¶ 46; *id.*, Ex. 21.)

On or about July 28, 2003, Plaintiff was called to a meeting with Illinois Bell supervisory personnel to discuss various complaints from her co-workers about her disruptive behavior. (*Id.* ¶ 47; *id.*, Ex. 22.) During the meeting, Plaintiff refused to speak, and then stated that she was unable to stand or walk. (*Id.* ¶ 48.) Concerned that Plaintiff was ill, Edgar called 911. (*Id.*; *id.*, Ex. 22.)

Due to her continued disruptive behavior, Plaintiff was suspended a second time on July 30, 2003, pending a fitness for duty examination. (*Id.* ¶ 49; *id.*, Exs. 8, 12.) On August 25, 2003, Edgar left two phone messages for Plaintiff to inform her that the examination had been scheduled for the following day. (*Id.* ¶ 50.) Plaintiff claims she did not get the messages, and she did not attend the appointment. (*Id.*; *id.*, Ex. 8 at 67.) Another appointment was scheduled with Dr. Cooperman for September 15, 2003, and this time Plaintiff did attend. (*Id.* ¶ 51.) After completing an examination, Dr. Cooperman provided a report to SMAART stating, "I do not believe Ms. Pough represents a grave risk to coworkers but she is paranoid and she may again

become threatening in the workplace. Therefore, I do not believe she should return to work yet." (*Id.* ¶ 52; *id.*, Ex. 23.) Dr. Cooperman opined that Plaintiff was in need of psychotherapy and medication. (*Id.*, Ex. 23.) Based on Dr. Cooperman's report, Plaintiff was not permitted to return to work. (*Id.* ¶ 53; *id.*, Ex. 3.) Plaintiff's union initiated an application for disability benefits on her behalf, and she received short-term disability benefits from October 7, 2003 through November 16, 2003.[2] (*Id.* ¶ 53.)

On October 24, 2003, SMAART sent Plaintiff a letter advising her that she might be eligible for additional disability benefits if she could provide medical documentation to support her disability claim. (*Id.* ¶ 55; *id.*, Ex. 25.) SMAART employees attempted to contact Plaintiff several times between October 30, 2003, and November 17, 2003, but were unable to reach her. (*Id.* ¶ 57; *id.*, Ex. 3.) Plaintiff sent SMAART a letter dated November 5, 2003, in which she asserted that the disability claim made on her behalf by the union was "fraudulent" since she was not disabled. (*Id.* ¶ 59; *id.*, Ex. 27.) On November 18, 2003, SMAART employees sent Plaintiff a letter informing her that she was not eligible for benefits after November 16, 2003, due to her failure to provide any information that would support a finding of continued disability. (*Id.* ¶ 61; *id.*, Ex. 29.) Plaintiff's supervisor sent Plaintiff a letter on or about December 17, 2003, informing her that based on the denial of her claim for short-term disability benefits, she had to do one of two things by January 2, 2004, to avoid being terminated: she must either provide a medical release indicating her ability to return to work, or submit information showing a continued need to remain on leave. (*Id.* ¶ 63; *id.*, Ex. 30.) Plaintiff did not respond, and she was terminated effective January 5, 2004. (*Id.* ¶ 65; *id.*, Exs. 3, 12.)

---

[2] During her employment, Plaintiff was a member of the Illinois Brotherhood of Electrical Workers, Local 21. (R. 92, Defs.' Facts ¶ 28.)

Under the STD Plan, Plaintiff was eligible for up to 52 weeks of full pay for a qualifying medical condition. (*Id.* ¶ 66; *id.*, Ex. 31.) The STD Plan also provided an appeal procedure. (*Id.*) On or about April 1, 2004, Plaintiff appealed the denial of her claim for short-term disability benefits for the time period November 17, 2003, through May 19, 2004. (*Id.* ¶ 67; *id.*, Ex. 32.) On or about April 15, 2004, Plaintiff provided medical documentation in support of her appeal and claimed that a "hormonal imbalance" and menopausal symptoms qualified her for short-term disability benefits. (*Id.* ¶ 68; *id.*, Ex. 33.) Two independent physician advisors for SMAART reviewed Plaintiff's file and determined that Plaintiff was not eligible for benefits after November 16, 2003. (*Id.* ¶ 71; *id.*, Ex. 3.) SMAART sent Plaintiff a final determination denying her claim for short-term benefits on May 11, 2004. (*Id.* ¶ 71; *id.*, Ex. 34.)

## PROCEDURAL HISTORY

On March 4, 2005, Plaintiff filed this action through the law firm of Gaffney and Gaffney ("Gaffney"). (R. 1, Compl.) On June 21, 2005, she filed her First Amended Complaint ("FAC"), through Gaffney, alleging four claims. (R. 24, FAC.) In Count I, Plaintiff alleges that Illinois Bell violated Title VII by suspending and then terminating her on the basis of her race and sex, and in retaliation for her complaints of discrimination. (R. 24, FAC, Count I, ¶¶ 1-13.) In Count II, Plaintiff alleges that Illinois Bell violated the ADEA by discriminating against her on the basis of her age. (*Id.*, Count II, ¶¶ 1-12.)[3] In Count III, Plaintiff alleges that Illinois Bell violated her rights under the ADA by terminating her on the basis of her disability. (*Id.*, Count III, ¶¶ 1-16.) In Count IV, Plaintiff alleges that Defendants violated ERISA by failing to give full and fair review to her benefit claims, failing to comply with their fiduciary responsibilities, and

---

[3] In her FAC, Plaintiff re-numbered the paragraphs under each count. (*See* R. 24, FAC.)

terminating her with the intention of interfering with her receipt of disability benefits. (*Id.*, Count IV, ¶¶ 1-14.)

On July 13, 2005, in an effort to resolve the case, the parties jointly requested that Plaintiff be evaluated by a physician pursuant to Federal Rule of Civil Procedure 35 so that Defendants could reconsider her request for short-term disability benefits. (R. 31, Minute Entry.) The Court stayed the case pending the completion of Defendants' reevaluation of Plaintiff's claim for benefits. (*Id.*; R. 92.) During the reevaluation process, with the help of Gaffney, Plaintiff provided additional documentation to support her claim for short-term disability benefits. (R. 92, Defs.' Facts ¶ 14; *id.*, Ex. 3). SMAART found this documentation sufficient to demonstrate a disability, and in May 2007 awarded Plaintiff a lump sum amount of $10,935.31 in short-term disability benefits. (*Id.* ¶¶ 15-16.) Plaintiff's counsel tendered a check in this amount to Plaintiff in open court on May 8, 2007. (R. 39, Minute Entry.)

With her attorney's assistance, Plaintiff also applied for long-term disability benefits. (R. 92, Defs.' Facts ¶ 17.) In June 2007, SMAART found Plaintiff eligible for long-term disability benefits and awarded her a lump sum amount of $28,169.64. (*Id.*) She was also approved to continue to receive monthly long-term disability benefits through August 31, 2008, contingent on her provision of updated information about her condition.[4] (R. 92-2, Defs. Facts, Ex. 3.)

Shortly after Plaintiff was awarded long-term disability benefits, Gaffney filed a motion to withdraw as Plaintiff's counsel, stating that Plaintiff had not been cooperative with him and

---

[4] The LTD Plan indicates that if Plaintiff continues to suffer from a disability, she may be eligible to continue to receive benefits until she reaches age 65. (R. 92-6, Defs.' Facts, Ex. 35.)

that recent communications between them had become contentious.[5] (R. 43, Gaffney's Mot. to Withdraw.) On June 25, 2007, this Court granted Gaffney's motion to withdraw and appointed Attorney Lisa Kane ("Kane") to represent Plaintiff. (R. 48, Minute Entry; R. 92, Defs.' Facts ¶ 19.) On July 5, 2007, pursuant to Kane's direction, counsel for Illinois Bell mailed Plaintiff a check for $19,366.66, her lump sum payment after taxes. (R. 92, Defs.' Facts ¶ 20; *id.*, Ex. 5.) The letter came back marked "return to sender." (*Id.* ¶ 21.) On July 24, 2007, pursuant to Kane's direction, counsel for Illinois Bell re-sent Plaintiff the check. (*Id.*) An Illinois Bell employee received confirmation that Federal Express delivered the package, with the check enclosed, to Plaintiff. (*Id.*)

In September 2007, Kane sought to withdraw as counsel due to Plaintiff's lack of cooperation and her "aggressive demeanor," and on October 2, 2007, the Court granted Kane's motion.[6] (R. 71, Kane's Mot. to Withdraw; R. 73, Minute Entry.) Pursuant to this Court's instructions, Kane deposited with the Clerk of the Court three boxes of documents pertaining to this case that she had received from Gaffney and from Defendants in discovery, all of which were

---

[5] Gaffney had previously moved to withdraw in July 2005, asserting that Plaintiff had been uncooperative with him and that her psychological problems made it difficult for him to act as her counsel. (R. 25, Gaffney's Mot. to Withdraw.) Later that month, counsel agreed to withdraw the motion and represent Plaintiff during the process of Defendants' reevaluation of Plaintiff's claim for disability benefits. (R. 31, Minute Entry; R. 92, Defs.' Facts ¶ 13.)

[6] In July 2007, the Court granted a motion by Kane to withdraw as Plaintiff's counsel, but at Kane's suggestion, reappointed her as Plaintiff's *guardian ad litem* due to Plaintiff's psychological problems and her apparent inability to cooperate with counsel. (R. 54, Kane's Mot. to Withdraw; R. 92, Defs.' Facts ¶ 22.) Kane thereafter filed a motion for relief from her appointment as *guardian ad litem*, asserting that Plaintiff had been "adamant" that she did not need the services of a *guardian ad litem*. (R. 62, Kane's Mot. for Relief.) On August 22, 2007, the Court granted Kane's motion for relief from her appointment as *guardian ad litem*, and reappointed her as Plaintiff's counsel. (R. 65, Minute Entry.)

fully accessible to Plaintiff. (*See* R. 79, Minute Entry; R. 80, Minute Entry.) Since Kane's withdrawal, Plaintiff has been proceeding *pro se*. (R. 92, Defs.' Facts ¶ 25.)

On April 1, 2008, Defendants moved for summary judgment on all counts. (R. 89, Defs.' Mot. for Summ. J.) At a status hearing shortly thereafter, Plaintiff made an oral motion for appointment of new counsel, which the Court entered and continued, ordering Plaintiff to bring information regarding her income to the next status hearing. (R. 94, Minute Entry.) Plaintiff failed to do so, and instead filed a confusing document labeled, "Complaint," in which she appeared to complain about Magistrate Judge Brown and her attorneys' handling of her case.[7] (R. 95, *Pro Se* Complaint.) With Plaintiff present, the Court went through the document in detail at a status hearing held on April 17, 2008, and thereafter struck the document from the record as legally insufficient. (R. 96, Minute Entry.) The Court again reminded Plaintiff of the need to provide a financial affidavit, and entered and continued Plaintiff's oral request for the appointment of counsel until the financial affidavit was filed. (*Id.*) The Court also set a briefing schedule on Defendants' motion for summary judgment. (*Id.*)

On May 20, 2008, Plaintiff filed a *pro se* response to the motion for summary judgment. (R. 98, Pl.'s Resp. to Defs.' Mot. for Summ. J.) To date, Plaintiff has not submitted a financial

---

[7] For instance, one of Plaintiff's "claims" was as follows: "If my spoken words in Magistrate Judge Geraldine Soat Brown can't be spoken outside her courtroom has been ruled." (*See* R. 95, *Pro Se* Complaint.)

affidavit in support of her request for the appointment of new counsel.[8]

## LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Summary judgment is the "put up or shut up moment in a lawsuit," when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## ANALYSIS

To succeed on their motion for summary judgment, Defendants must establish that Plaintiff has not produced evidence creating a triable issue of fact on her remaining Title VII, ADEA, ADA and ERISA claims and that they are entitled to judgment on these claims.

## I. Title VII and ADEA Claims

In her FAC, Plaintiff alleges that Illinois Bell violated Title VII and the ADEA by suspending and terminating her on the basis of her race, sex, and age. (R. 24, FAC, Counts I-II.)

---

[8] In her response to the motion for summary judgment, Plaintiff states: "I am unsure of my Assets, since my rights, I feel, have been non-existent, and taken away since my 'drugging' on the job, in October of year 2002. . . . The request that all parties bring financial statement to court at the last date, could not be properly address[ed] by myself without an 'Asset Search' which I'm unable to afford for 2 States." (R. 98, Pl.'s Resp. to Defs.' Mot. for Summ. J. at 9.) The Court does not understand this statement, but remains concerned that Plaintiff would not be financially eligible for appointed counsel in light of the lump sum payments and monthly disability benefits she is receiving.

She further claims that Illinois Bell retaliated against her for filing a charge with the Equal Employment Opportunity Commission ("EEOC") and for making internal complaints of discrimination. (*Id.*, Count I, ¶ 9.) Illinois Bell argues that Plaintiff fails to establish a *prima facie* case of discrimination or retaliation because she cannot show that she was qualified for her position or that similarly situated employees were treated more favorably than her. (R. 91, Defs.' Mem. in Supp. of Mot. for Summ. J. at 7-8.)

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA proscribes employment discrimination on account of a person's age. 29 U.S.C. § 623(a)(1)(2). Plaintiff can prevent summary judgment on her Title VII and ADEA claims by producing either direct evidence of discriminatory intent or by establishing a *prima facie* case pursuant to the indirect, burden-shifting method set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 724 (7th Cir. 2005). Plaintiff does not present any direct evidence of discrimination or retaliation, and thus, this Court will analyze her claims under the indirect method. *See Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007).

To establish a *prima facie* case of discrimination under either Title VII or the ADEA using the indirect method, Plaintiff must establish that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated individuals who are not members of her protected class. *Faas v. Sears, Roebuck & Co.*,

11

--- F.3d ---, 2008 WL 2685527, at *7 (7th Cir. 2008); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). Similarly, to establish a claim of retaliation under Title VII, Plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; (3) she was performing her job satisfactorily; and (4) others who were similarly situated did not receive the same treatment. *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008). Defendants contend that summary judgment is warranted on the Title VII and ADEA claims because Plaintiff cannot establish that she was meeting Illinois Bell's legitimate expectations, or that she was treated less favorably than similarly situated employees outside of her protected class. (R. 91, Defs.' Mem. in Supp. of Mot. for Summ. J. at 7.)

After reviewing the record, the Court concludes that Plaintiff has failed to show she was meeting Illinois Bell's legitimate performance expectations. The record indicates that Plaintiff received two written warnings and two suspensions for engaging in disruptive and confrontational behavior that prompted complaints from her co-workers.[9] Following her second

---

[9] In her response to the motion for summary judgment, Plaintiff appears to dispute the incident leading up to her first suspension in which she allegedly called her co-worker "fat." (*See* R. 98, Pl.'s Resp. to Defs.' Mot. for Summ. J. at 7.) As stated herein, Plaintiff did not properly respond to Defendants' statement of facts and thus Defendants' version of the facts have been deemed admitted. For the sake of completeness, the Court notes that even if Plaintiff had properly raised this issue, the apparent dispute about the "fat" incident would not be a basis for denying summary judgment. *Harney*, 526 F.3d at 1104 (only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment). Assuming Plaintiff could establish a *prima facie* case of discrimination, the burden would shift to Defendants to articulate a non-discriminatory reason for Plaintiff's suspensions and subsequent termination, which they have done here. Plaintiff would then have to show that the reasons given by Defendants were a pretext for discrimination. She would be unable to do so, since she has offered no evidence that Defendants did not honestly believe Huffman's account that Plaintiff had called her fat. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (to show pretext plaintiff must show more than that employer's decision was "mistaken, ill considered, or foolish; so long as the employer honestly believes those reasons, pretext has not been shown."). The Court notes, moreover, that Plaintiff does not dispute the other incidents forming the basis for her first suspension.

suspension, Dr. Cooperman opined that she should not be permitted to return to work, and that she was in need of medication and psychotherapy. (*Id.* ¶ 53.) SMAART attempted to contact Plaintiff numerous times to determine whether she could maintain eligibility for disability benefits, but she did not cooperate. (*Id.* ¶¶ 55, 57, 58, 60.) After nearly six months of absence from work, Plaintiff was advised that she must either provide a medical release demonstrating her ability to return to work, or submit information showing a continued need for medical leave, but she did not do so. (*Id.* ¶¶ 63-65.) Based on her disruptive and uncooperative conduct, Defendants have shown that Plaintiff was not meeting their legitimate expectations. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 824 (7th Cir. 2006); *see also Muhammad v. Catholic Charities*, No. 98-5178, 2000 WL 1100396, at *6 (N.D. Ill. Aug. 7, 2000) (employee not meeting legitimate expectations where she engaged in disruptive behavior, used profanity, called a co-worker names, and employer feared she might resort to physical violence).

Plaintiff avers generally that she was qualified for her position, stating, "I am a highly skilled COT . . . I have consciously and diligently always made efforts to make the Baby Bells the premier communications company in the Telephone Industry." (R. 98, Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5-6.) However, an employee's subjective evaluation of her performance does not create a genuine issue of fact as to the employer's contrary assessment of the employee. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007); *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 787 (7th Cir. 2001). In short, Plaintiff has not put forth any evidence that at the time of her suspensions and eventual termination she was meeting Illinois Bell's employment expectations.

Even if Plaintiff could establish that she was meeting her employer's legitimate expectations, Defendants further argue that she has also failed to show that she was treated less favorably than similarly situated employees outside her protected class. (R. 91, Defs.' Mem. in Supp. of Mot. for Summ. J. at 8.) This Court agrees. Plaintiff has submitted no evidence that others outside her protected class were treated more favorably than she was. In her response, Plaintiff suggests that she was treated differently from one of her co-workers, Amanda Huffman, because of her race. (R. 98, Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6 ("I do believe if one of my accusers, Amanda Huffman, was forced to walk in my shoes, every incident would have been handled with God speed to make it stop. . . . Amanda Huffman is white. I am colored.").) Elsewhere Plaintiff states, "Another employee, Jerry Upchurch, also was defiant, being a white male, I believe enable him to be returned to work immediately and compensated." (*Id.* at 8.) However, Plaintiff provides no detail to explain how she is similarly situated to these other employees, nor has she provided any documentary evidence to support her assertions. Uncorroborated assertions that similarly situated workers received more favorable treatment are insufficient to support a *prima facie* case of employment discrimination. *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 616 (7th Cir. 2001).

For the reasons stated above, Plaintiff has failed to establish a *prima facie* case of race, sex, and age discrimination or of retaliation. For these reasons, summary judgment on Plaintiff's Title VII and ADEA claims is granted.

## II.    ADA Claim

In the FAC, Plaintiff alleges that her suspension and termination constituted disability discrimination in violation of the ADA. (R. 24, FAC, Count III, ¶ 15.) Defendants argue that

14

Plaintiff has failed to put forth any evidence to show that she has a disability and that her pleadings and testimony on the issue have been inconsistent. (R. 91, Defs.' Mem. in Supp. of Mot. for Summ. J. at 9.) Defendants further argue that assuming Plaintiff is disabled, she has not shown that she was otherwise qualified for the position. (*Id.* at 10.)

In order to establish a claim of disability discrimination under the ADA, Plaintiff must show that: (1) she is a person with a disability as defined by the Act; (2) she was qualified for the job that she was performing; and (3) she suffered an adverse employment action because of her disability. *Dargis v. Sheahan*, 526 F.3d 981, 986 (7th Cir. 2008). A plaintiff is considered "disabled" for purposes of the ADA if she: (a) has a physical or mental impairment that substantially limits one or more major life activity, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, or sleeping; (b) has a record of such an impairment; or (c) is regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(I). Medically diagnosed mental conditions are considered impairments under the ADA. *Krocka v. City of Chicago*, 203 F.3d 507, 512 (7th Cir. 2000); *Grevas v. Village of Oak Park*, 235 F. Supp. 2d 868, 873 (N.D. Ill. 2002).

Defendant argues that Plaintiff cannot show that she has a medical condition rendering her disabled, arguing that "Plaintiff explicitly denied on several occasions during her deposition that she had any psychiatric condition." (R. 91, Defs.' Mem. in Supp. of Mot. for Summ. J. at 9.) Based on the record, the Court rejects this argument. The evidence in the record submitted *by Defendants* indicates that in 2002 Plaintiff was hospitalized for seven days with "manic psychosis." (R. 92-3, Defs.' Facts, Ex. 9.) In 2003, SMAART's selected physician, Dr. Cooperman, described Plaintiff as "depressed with psychotic paranoid features," noting that she

15

was suffering from delusions and hallucinations, and opining that Plaintiff was in need of psychotherapy and medication. (R. 92-4, Defs.' Facts, Ex. 23.) Finally, SMAART has approved Plaintiff for both short-term and long-term disability benefits, concluding that she submitted sufficient documentation to establish that she is disabled and unable to work. To the extent Plaintiff has at times denied that she is suffering from a mental illness, this is more likely due to the illness itself than to any inconsistency on her part: The doctor who first treated Plaintiff in 2002 noted that she "appeared to be in denial of [her] illness, and in denial of [the] need for recommended psychotherapy and psychotropic medication."[10] (R. 92-3, Defs.' Facts, Ex. 9.) In short, the Court finds sufficient evidence to establish that Plaintiff is suffering from a disability.

Nevertheless, to succeed on her ADA claim, Plaintiff also must prove that she was qualified for her position. For a plaintiff to establish that she is a "qualified" individual with a disability, she must show that she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires." 42 U.S.C. § 12111(8); *see also Mobley v. Allstate Ins. Co.*, 531 F.3d 539 (7th Cir. 2008); *Darnell v. Thermafiber, Inc.*, 417 F.3d 657, 659-60 (7th Cir. 2005). Defendants assert that Plaintiff was not qualified because she was not released to return to work after her second suspension.

After Plaintiff's second suspension, Dr. Cooperman examined her and opined that Plaintiff was paranoid, might become threatening again in the workplace, and should not be allowed to return to work. (*Id.* ¶ 52.) An individual is not qualified if he presents a direct threat

---

[10] The Court notes that although Plaintiff has denied suffering from a mental illness, in her response to Defendants' motion she states, "[M]y mental facilities, I believe will never return back to the level that I'm accustomed." (R. 98, Pl.'s Resp. to Defs.' Mot. for Summ. J. at 7.)

to his own health and safety or that of others. *Darnell*, 417 F.3d at 660; *Bekker v. Humana Health Plan*, 229 F.3d 662, 670-71 (7th Cir. 2002). The determination that an individual poses such a threat must be premised upon "a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence, and upon an expressly individualized assessment of the individual's present ability to safely perform the essential functions of the job." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002). That individualized determination was made here by Dr. Cooperman. Plaintiff has offered no evidence to refute the opinion of Dr. Cooperman, or any evidence indicating that she was released to return to work by another doctor after her suspension. Further, before terminating Plaintiff, Defendants made repeated efforts to determine whether Plaintiff was capable of returning to work or eligible for disability benefits, but she failed to cooperate. For these reasons, Plaintiff has failed to show that she is a qualified individual with a disability for purposes of the ADA. Thus, summary judgment is granted on her ADA claim.

## III. ERISA

### A. Denial of Full and Fair Review

Plaintiff alleges that she was denied full and fair review in violation of ERISA when Defendants initially denied her claim for short-term disability benefits. (R. 24, FAC, Count IV, ¶ 11.) An ERISA plan administrator's denial of benefits is reviewed *de novo* except when the plan clearly confers discretionary authority on the administrator to determine benefit eligibility; in such a case the arbitrary and capricious standard of review applies. *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 486 (7th Cir. 2007); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). The STD and LTD Plans give

full discretionary authority to Ameritech Employees' Benefit Committee to interpret the Plans and determine participants' eligibility for benefits. (R. 92, Defs.' Facts, Ex. 31 at 17; *id.*, Ex. 35 at 6-7.) Thus, the Court will review the denial of Plaintiff's benefits under the arbitrary and capricious standard.

Under this standard, the Court "does not ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority. . . . Instead, the only question for us is whether the administrator's decision was completely unreasonable." *Kobs v. United Wisc. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005). Further, judicial review is limited to the evidence that was submitted in support of the application for benefits. *Patton*, 480 F.3d at 483; *Perlman v. Swiss Bank Corp. Comp. Disability Prot. Plan*, 195 F.3d 975, 982 (7th Cir. 1999).

Both the STD and LTD Plans provide as follows: "If an Eligible Employee fails to provide proper information respecting his or her condition, fails to furnish objective medical documentation for such condition or fails to follow a medically credible treatment plan, reasonably designed (where practicable) to effect the Eligible Employee's recovery and return to work, Plan benefits are not payable." (R. 92, Defs.' Facts, Ex. 31, at 11; *Id.*, Ex. 35, at 7.) It is undisputed that SMAART employees attempted to contact Plaintiff on numerous occasions in order to obtain information from her to determine whether she was eligible for disability benefits. (R. 92, Defs.' Facts ¶¶ 55, 57, 58, 60). Plaintiff did not cooperate. (*Id.* ¶ 65.) Moreover, Plaintiff sent a letter to SMAART during this period stating that the disability claim filed on her behalf was "fraudulent" because she was not disabled. (*Id.* ¶ 59.) After the denial of benefits, Plaintiff appealed, and asserted that she was eligible for disability benefits due to a hormonal

imbalance and menopausal symptoms. (*Id.* ¶ 68.) Two physician advisors reviewed Plaintiff's file and determined that the medical information did not provide clinical evidence to support a disability after November 16, 2003. (*Id.* ¶ 71; Ex. 3 ¶ 24.) Based on the record, SMAART's denial of benefits was reasonable. *See Kobs*, 400 F.3d at 1040. Plaintiff's claim that Defendants denied her a full and fair review in violation of ERISA therefore fails.

### B.    Breach of Fiduciary Duty

Plaintiff next alleges that Defendants failed to comply with their fiduciary responsibilities in violation of 29 U.S.C. § 1104(a)(1). (R. 24, FAC, Count IV, ¶ 12.) "ERISA requires a trustee or other fiduciary to administer a plan solely in the interest of the participants and beneficiaries of the plan." *Herman v. Central States*, 423 F.3d 684, 695 (7th Cir. 2005). Thus, "a breach of fiduciary duty exists if fiduciaries mislead plan participants or misrepresent the terms or administration of a plan." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 640 (7th Cir. 2004). While there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable. *Id.* at 642. The employer must have intended to disadvantage or deceive its employees in order for a breach of fiduciary duty claim to be made. *Id.* Both the Seventh Circuit and the Supreme Court have cautioned against using an action for breach of fiduciary duty under ERISA to litigate ordinary benefit claims. *Varity Corp. v. Howe*, 516 U.S. 489, 514-15 (1996); *Herman*, 423 F.3d at 695. That appears to be what Plaintiff is doing here. Plaintiff has not put forward any evidence showing that Defendants misled her or otherwise breached their fiduciary duty in administering the Plans, and thus, this claim fails as well.

## C.    Interference With Benefits

Finally, Plaintiff alleges that Defendants unlawfully terminated her employment with the purpose of interfering with her attainment of rights and benefits under the Plans. (R. 24, FAC, Count IV, ¶¶ 13-14.) Under ERISA, it is unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140. To establish such a claim, the plaintiff must demonstrate that the employer acted with the specific intent of interfering with her ERISA rights. *Benders v. Bellows & Bellows*, 515 F.3d 757, 765 (7th Cir. 2008); *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 891 (7th Cir. 2001). Plaintiff has failed to offer any evidence of such an intent by Defendants. Instead, as stated above, the evidence shows that Plaintiff was terminated due to the report of Dr. Cooperman stating that she should not be permitted to return to work, and her failure to cooperate in submitting either a medical release or further documentation of her need to remain on medical leave. The record reflects that Defendants repeatedly attempted to obtain information from Plaintiff so that she could maintain eligibility for disability benefits, but she did not cooperate. Further, during the course of this litigation, Defendants voluntarily agreed to reevaluate Plaintiff's claim, and based on the evidence submitted, they have since awarded her full short-term disability benefits and found her eligible to receive long-term disability benefits.

In sum, Plaintiff has not put forth any evidence to support her claims of an ERISA violation. Accordingly, Illinois Bell's motion for summary judgment on this count is granted.

## CONCLUSION

As detailed herein, this lawsuit has been unduly prolonged and frustrating for both the parties and the Court. While the Court is sympathetic to Plaintiff's difficulties, this sympathy does not permit the Court to overlook the deficiencies in her remaining claims. Plaintiff's lack of effective cooperation with her prior attorneys and her failure to abide by the rules of this Court have not advanced her claims. Yet Plaintiff, unlike many other plaintiffs, has partially succeeded in this lawsuit and is now receiving disability benefits.

For the reasons stated herein, Defendants' motion for summary judgment (R. 58) is granted. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.

**ENTERED:**

**Judge Ruben Castillo**
**United States District Court**

**Dated: August 6, 2008**